IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JENNIFER LYNN CARTWRIGHT,<br><br>    Plaintiff,<br><br>vs.<br><br>LORI BARTLING, JORDAN BALL, Former City Prosecutor, CITY OF SIDNEY, NEBRASKA, JONY MATHEWS, Code Enforcer; and GARY PEARSON, City Manager;<br><br>    Defendants. | 8:14CV246<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion to Dismiss (Filing No. 16) filed by Defendant Lori Bartling ("Bartling") and the Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement (Filing No. 23) filed by Defendants City of Sidney, Nebraska ("City of Sidney"), Joanie Matthes ("Matthes")[1] Jordan Ball, and Gary Pearson (collectively "the City Defendants"). Bartling and the City Defendants will be referred to herein collectively as "Defendants." For the reasons stated below, Bartling's Motion will be granted and the City Defendants' Motion will be denied.

### PROCEDURAL BACKGROUND

Plaintiff Jennifer Lynn Cartwright ("Cartwright") filed her Amended Complaint (Filing No. 11) on December 8, 2014. She is not represented by counsel. To draft her Amended Complaint, she used a pro se civil complaint form similar to the form available

---

[1] Spelled "Jony Mathews" in Plaintiff's Amended Complaint.

on this Court's website.[2] Under the heading "Statement of Claim(s)" the form complaint instructs the pro se filer as follows:

> State briefly the facts of your claim. Describe how each defendant is involved. You do not need to give legal arguments or cite cases or statutes. Use as much space as you need to state the facts. (Attach extra sheets if necessary.)

(Filing No. 11 at ECF 2.)

Rather than describe the facts of her claims in her Amended Complaint, Cartwright attached a "Commission Determination" and "Final Investigative Report" from the Nebraska Equal Opportunity Commission (collectively the "NEOC Documents"). (*See* Filing No. 11*.* at ECF 6-46.) Defendants have moved to dismiss for failure to state a claim and on immunity grounds.

**FACTS**

For purposes of the pending motions, Cartwright's well-pled facts are accepted as true, though the Court need not accept proposed conclusions of law. Because she is pro se, her Amended Complaint must be liberally construed.[3] It is clear that Cartwright attached the NEOC Documents to her Amended Complaint in order to provide the factual basis for her claims. However, these documents include responses and defenses apparently made by Defendants. Construing the Amended Complaint liberally, the Court concludes that Cartwright did not intend that the statements allegedly made by Defendants be accepted as true for purposes of the pending motions. Therefore,

---

[2] *See* http://www.ned.uscourts.gov/public/proceeding-without-an-attorney

[3] "A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties . . . ." *Topchian v. JPMorgan Chase Bank, N.A.,* 760 F.3d 843, 849 (8th Cir. 2014) (internal quotation marks and citations omitted).

2

unless otherwise stated, the factual summary bellow is drawn from facts stated in the Commission Determination (Filing No. 11 at ECF 6); the Final Investigative Report findings (Filing No. 11 at ECF 7-8); Cartwright's Interviews (Filing No. 11 at ECF 13-19; 24-27); documents provided to HUD[4] by Cartwright (Filing No. 11 at 28-32; 43); and documents provided by Equal Opportunity Specialists (11 at ECF 32-33).

During the time period relevant to Cartwright's Amended Complaint, she lived in a small town where everybody knew her and her family. (Filing No. 11 at ECF 25.) In that town, she and her boyfriend, Troy Frerichs ("Frerichs"), lived together in a single family home owned by Frerichs. (Filing No. 11 at ECF 13, 19.) Frerichs and Cartwright shared ownership of a dog named Paris. (Filing No. 11 at ECF 13,18.) Frerichs also owned a dog named Putsy, and Cartwright owned two other dogs named Midget and Boogie. (Filling No. 11 at ECF 13, 18, 28.) Altogether, Frerichs and Cartwright housed four dogs on Frerichs's property. (Filing No. 11 at ECF 18.)

Midget and Boogie were service dogs. (Filling No. 11 at ECF 13,18.) During the time relevant to her Amended Complaint, Cartwright was disabled. (Filing No. 11 at ECF 16.) She was diagnosed with Post Traumatic Stress Disorder ("PTSD") in 1995 (Filing No. 11 at ECF 16), and at some point her doctor prescribed two service dogs to assist her in coping with her impairments and alert her to danger.[5] (Filing No. 11 at ECF 17, 44.) Midget, Boogie, and Paris were licensed with the City of Sidney. (Filing No. 11 at

---

[4] Housing and Urban Development ("HUD") is "the agency tasked with implementing the [Fair Housing Act] . . . ." *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 711 (9th Cir. 2009).

[5] A letter from her doctor dated January 26, 2012, states the doctor prescribed two services dogs. (Filing No. 11 at ECF 44.)

3

18.) Midget and Boogie were also registered as service dogs some time prior to July 25, 2011. (Filing No. 11 at ECF 18.)

On July 25, 2011, Cartwright asked that Defendants allow her to have two service animals, but Defendants refused to grant her request. (Filing No. 11 at ECF 7.) As of July 25, 2011, Defendants were aware of Cartwright's disabilities because she had provided medical documentation and certification establishing her need for service animals. (Filing No. 11 at 16,17.)

On or about August 22, 2011, Cartwright's service animals were found to be in violation of a city ordinance, and fines were levied against Cartwright. (Filing No. 11 at ECF 8.) Thereafter, she was threatened with the forced removal and destruction of her service animals. (Filing No. 11 at ECF 8.) Cartwright provided the City of Sidney with documentation and certification that both of her dogs were service animals and medically necessary. (Filing No. 11 at ECF 7.) Nevertheless, she was charged with "keeping of three or more dogs" and "not having dogs licensed." (Filing No. 11 at ECF 7-8,14.) Thereafter, she was cited and fined for exceeding the maximum number of dogs and for having an unlicensed dog. (Filing No. 11 at ECF 18.)

Frerichs, who is male and is not disabled, was not cited for exceeding the maximum of three dogs allowed within the city limits. (Filing No. 11 at ECF 8.) When Cartwright asked code enforcer, Jordan Ball, "why she was the one being served when her dogs were in compliance in the first place, and the dog that [was] not licensed [was] [Frerichs's] dog, she was told that it was to cut down on paperwork . . . ." (Filing 11 at ECF 15,19 (original in all capital letters).)

On December 12, 2011, Cartwright was unable to attend a scheduled court proceeding because she was having surgery. (Filing No. 11 at ECF 8.) She called the court clerk, Bartling, on December 12, 2011, and Bartling informed her that "her only option was to come and pay the fine or a warrant for [her] arrest would be issued." (Filing No. 11 at ECF 19.) At the hearing, a judge rendered a decision against Cartwright, and on December 13, 2011, Bartling, threatened to bar Cartwright from contacting the County Court. (Filing No. 11 at ECF 8.)

On December 23, 2011, Cartwright filed a fair housing complaint. (Filing No. 11 at ECF 8.) The NEOC issued the following charges of discrimination pursuant to Neb. Rev. Stat § 20-333: "The [City of Sidney] has discriminated against [Plaintiff] on the issue of terms and conditions on the basis of sex, and on the issues of terms and conditions and reasonable accommodation on the basis of disability (failure to allow exemption for service animals)." (Filing No. 11 at ECF 6.) The NEOC also issued a "no reasonable cause determination" for Cartwright's "charge of discrimination on the issue of failure to accommodate and the basis of disability (licensing of service animals), and the issue of harassment and intimidation on the basis of retaliation . . . ." (Filing No. 11 at ECF 6.)

Beginning around February 2012, city law enforcement officers frequently drove by Cartwright's residence, parked close to her residence, and sat. (Filing No. 11 at ECF 8.) Cartwright lived in a cul-de-sac, and officers rarely drove by her house "before she filed her complaint." (Filing No. 11 at ECF 25.) Around March 15, 2012, city and county law enforcement officers handcuffed her non-custodial son, Dillon Grabowski, and "threatened to Taser him if he did not go to the police department without his mother."

(Filing No. 11 at ECF 8, 24.) After several hours in a holding cell, Grabowski was cited for interfering with a police officer. (Filing No. 11 at ECF 8.) The law enforcement officers involved in the March 15, 2012, incident were aware of Cartwright's complaint of housing discrimination. (Filing No. 11 at ECF 8.) She wanted to file a police report against her son's guardian, but she was not allowed to do so. (Filing No. 11 at ECF 8.)

After the incident with her son, Cartwright was afraid to contact law enforcement. (Filing No. 11 at ECF 25.) On around April 12, 2012, a domestic abuse incident occurred between Cartwright and Frerichs. (Filing No. 11 at ECF 8.) Two officers forced Cartwright and her son to vacate the premises. (Filing No. 11 at ECF 8.) Frerichs was not arrested even though Cartwright had visible signs of bruising. (Filing No. 11 at ECF 8.)

On or about April 16, 2012, Cartwright picked up her daughter with her ex-husband's permission. (Filing No. 11 at ECF 8.) Sometime after picking up her daughter, Plaintiff received a phone call from Officer Tim Craig informing her that if she returned to the property where her daughter lived, she would be arrested for disturbing the peace. (Filing No. 11 at ECF 8.)

## STANDARDS OF REVIEW

**Fed. R. Civ. P. 12(b)(6), Failure to State a Claim**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. v. Willmar Pub. Sch.,*

6

*Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 630 (citing *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). "Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions." *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010)) (internal quotation marks omitted). "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual allegations must be "sufficient 'to raise a right to relief above the speculative level.'" *Williams v. Hobbs*, 658 F.3d 842, 848 (8th Cir. 2011) (quoting *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009)).

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The complaint,

however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Regardless of whether a plaintiff is represented or appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally in order to "do substantial justice." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting Fed. R. Civ. P. 8(f)) (internal quotation marks omitted). Although pro se complaints must be liberally construed, they must still "allege sufficient facts to support the claims advanced", and the court need not "supply additional facts, nor . . . construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (internal quotation marks and citations omitted).

## DISCUSSION

The City Defendants moved to dismiss Cartwright's claims for failure to state a claim, or, in the alternative under the doctrine of qualified immunity. Bartling moved to dismiss Cartwright's claims for failure to state a claim, or, alternatively, under the doctrine of absolute judicial immunity.

In its previous Memorandum and Order, this Court stated that "it appears Plaintiff intends to sue Defendants for discrimination against her on the basis of sex and disability in violation of the Fair Housing Act ["FHA"], 42 U.S.C. §§ 3601-3631, and the Nebraska Fair Housing Act ["NFHA"], Neb. Rev. Stat. § 20-333." (Filing No. 13 at ECF 1.) In their briefs (Filing Nos. 17 and 23-1), Defendants devote little argument to an analysis of whether Cartwright sufficiently stated claims under the FHA and the NFHA. Instead, the Defendants emphasize her failure to follow the Federal Rules of Civil Procedure and failure to include her factual allegations directly in the form complaint, instead attaching the NEOC Documents.

A district court should not dismiss a pro se complaint for failure to comply with Federal Rules of Civil Procedure where the pleadings narrate "a sequence of events which arguably gave rise to a cause of action and [can] be addressed by a responsive pleading." *See Miles v. Ertl Co.*, 722 F.2d 434 (8th Cir. 1983) ("[I]n circumstances where a petitioner's poverty forces him to proceed *pro se,* a court ought not to reject on technical grounds a right asserted within the hand-drawn (*pro se*) complaint.") (internal quotation marks and citations omitted).

Liberally construed, the Court finds that Cartwright alleged FHA and NFHA claims against the City Defendants, but no claim for relief with respect to Bartling.

**I.     THE CITY DEFENDANTS**

   A.     Qualified Immunity

The City Defendants moved to dismiss Cartwright's Amended Complaint on the grounds that qualified immunity bars her claims. "'[Q]ualified immunity is an affirmative defense' and 'it will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'" *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996) (quoting *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995)). "Qualified immunity shields public officials performing discretionary functions from liability for conduct that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015) (quoting *Meehan v. Thompson*, 763 F.3d 936, 940 (8th Cir. 2014)).

First, the Court notes that, because it is a governmental entity, qualified immunity is not an available defense to the City of Sidney. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("Qualified immunity is not a defense available to governmental entities, but only to government employees sued in their individual capacity."). With respect to the individually named city defendants, Jordan Ball, Joanie Matthes, and Gary Pearson, the Court notes that, in her Amended Complaint, Cartwright did not specify the capacity in which those parties are sued. Accordingly, the Court assumes she sued those defendants in their official capacities. *See Johnson*, 172 F.3d at 535 (Where a plaintiff fails to "expressly and unambiguously" state that a public official is sued in his individual capacity in the pleadings, the court "assume[s] that the defendant is sued only in his or her official capacity.").

It is long established that "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. . . . As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal quotation marks and citations omitted). There is no dispute that the entity of which Jordan Ball, Joanie Matthes, and Gary Pearson are agents, the City of Sidney, is a party to this suit and has had an opportunity to respond. Therefore, "in all respects other than name" this suit is a suit against the City of Sidney, *see Graham*, 473 U.S. at 165-66, and the City Defendants' motion to dismiss on qualified immunity grounds will be denied.

B.     FHA AND NFHA CLAIMS

Cartwright alleged that the City Defendants discriminated against her on the basis of her sex and disability. She also alleged that the City Defendants harassed and intimidated her in retaliation for filing a fair housing complaint.[6] A plaintiff must prove discriminatory intent to prevail on a claim under the FHA. *Dirden v. Dep't of Hous. & Urban Dev.*, 86 F.3d 112, 114 (8th Cir. 1996). "Absent direct evidence of discrimination, courts apply the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Tesemma v. Evans*, No. CIV. 09-2744 DSD/JJK, 2011 WL 3418227, at *2 (D. Minn. Aug. 4, 2011) (citing *Dirden,* 86 F.3d at 114; *United States v. Badgett,* 976 F.2d 1176, 1178 (8th Cir. 1992)). "Pursuant to that framework, the plaintiff

---

[6] Although Cartwright's allegations do not involve the sale or rental of her home, post-acquisition claims are actionable under sections 3604 and 3617 of the FHA. *United States v. Koch*, 352 F. Supp. 2d 970, 975-76 (D. Neb. 2004) ("[T]he Eighth Circuit has held that a plaintiff can base a section 3604 or 3617 claim on discriminatory acts that occurred after housing had been acquired.") (citing *Neudecker,* 351 F.3d 361).

11

must first make a prima facie showing of discrimination." *Id.* (citing *McDonnell Douglas,* 411 U.S. at 802). The requirements of a prima facie showing of discrimination "will vary from case to case, depending on the allegations and the circumstances." *Badgett,* 976 F.2d at 1178. If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the defendant's conduct. *Id.* The burden then shifts back to the plaintiff who must rebut the defendant's proffered reason by showing that it is pretext for unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 802. The same framework applies to Cartwright's claims under the NFHA. *See Osborn v. Kellogg*, 547 N.W.2d 504, 511 (Neb. App. 1996).

To survive a 12(b)(6) motion to dismiss, "a plaintiff need not plead facts establishing a prima facie case of discrimination under *McDonnell Douglas* . . . ." *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11 (2002)). The complaint need only contain "'a short and plain statement of the claim showing the pleader is entitled to relief.' . . . 'Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (internal citations and quotation marks omitted).

    1.    *Sex Discrimination*

Cartwright alleged that Defendants discriminated against her because she is female. (*See* Filing No. 11 at ECF 7.) Under section 3604(b) of the FHA, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The NFHA prohibits the same. Neb. Rev. Stat. § 20-318(2) (Reissue 2012).

Cartwright has not alleged any direct evidence of sex discrimination, and Court will analyze her claims of sex discrimination under the *McDonnell Douglas* framework. To establish a prima facie case, Cartwright "must show that she is a member of a protected class and that she was 'not offered the same terms, conditions or privileges of rental under circumstances that give rise to a reasonable inference of unlawful discrimination.'" *Tesemma*, 2011 WL 3418227, at *3 (citing *Groteboer v. Eyota Econ. Dev. Auth.,* 724 F.Supp.2d 1018, 1023 (D.Minn.2010)).

Here, there is no dispute that Cartwright, a female, is a member of a protected class. She alleged that both she and Frerichs lived in a house with four dogs. She was cited for exceeding the City of Sidney's three-dog limit and for having an unlicensed dog, while Frerichs, a male, was not. Liberally construing the Amended Complaint, Cartwright's allegations of sex discrimination under the FHA and NFHA give rise to a reasonable inference of unlawful discrimination and give the Defendants fair notice of her sex discrimination claim and the grounds upon which it rests; therefore, her allegations of sex discrimination are sufficient to withstand the City Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

### 2. Disability Discrimination

Cartwright alleged that the City Defendants discriminated against her on the basis of her disability because the City Defendants refused to grant her request for a reasonable accommodation. (*See* Filing No. 11 at ECF 7.) Under the FHA and NHFA it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling" on the basis of that person's disability. 42 U.S.C. § 3604(f)(2); *see also*

13

Neb. Rev. Stat. § 20-319(1)(b)(Reissue 2012). Discrimination prohibited by the FHA and NFHA includes the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ." 42 U.S.C. § 3604(f)(3)(B); Neb. Rev. Stat. § 20-319(2)(b).

To prevail on a reasonable accommodations claim under § 3604(f)(3)(B), a plaintiff must prove:

> (1) that the plaintiff . . . is handicapped within the meaning of [the FHA]; (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

*DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006). The FHA defines handicap as "a physical or mental impairment which substantially limits one or more of such person's major life activities, . . . a record of having such an impairment, or . . . being regarded as having such an impairment . . . ." 42 U.S.C. section 3602(h).

"The court applies a modified burden-shifting analysis to reasonable accommodation claims." *Groteboer*, 724 F. Supp. 2d at 1024 (citing *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004)). After a plaintiff shows "that the requested accommodation was 'reasonable on its face.' . . . [The defendant] must then 'show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances.'" *Id.*

14

Here, Cartwright alleged that she suffered from a disability, PTSD; as of the date she requested an accommodation, July 25, 2011, Defendants were aware of her disabilities; as of July 25, 2011, she provided Defendants with medical documentation and certification establishing her need for service animals; her doctor prescribed two service dogs to assist her in coping with her impairments and alert her to danger; and on July 25, 2011, she asked that Defendants allow her to have two service animals, but Defendants refused. Cartwright also alleged facts supporting a finding that her request was reasonable given the size of the four dogs[7] and the nature of the property on which she resided. (*See* Filing No. 11 at ECF 29 (describing Frerichs's house as sitting on a one-acre lot and fenced in with a five foot chain link fence.) The Court concludes that Cartwright's alleged facts give the City Defendants fair notice of her disability discrimination claim and the grounds upon which it rests; and her allegations of disability discrimination are sufficient to withstand the City Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

### 3. Retaliation

Cartwright alleged that the City Defendants "harass[ed] and intimidate[d] her in retaliation for filing a fair housing complaint . . . on December 23, 2011." (Filing No. 11 at ECF 8.) Under the FHA, it is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by . . . [42 U.S.C. §] 3604 . . . ." 42 U.S.C. § 3617. Under the NHFA, it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise of enjoyment of or on account of the person having

---

[7] The dogs each weighed less than seven pounds. (Filing No. 11 at ECF 13.)

exercised or enjoyed or having aided and encouraged any other person in the exercise of benefits and rights guaranteed by the Nebraska Fair Housing Act." Neb. Rev. Stat. 20-344 (Reissue 2012).

Cartwright alleged that after she filed her fair housing complaint, law enforcement frequently drove by her residence, and parked close to her residence. She alleged that prior to filing her fair housing complaint, officers rarely drove by her house. She also described several occasions when she, or members of her family, had negative interactions with city law enforcement. She alleged that such incidents occurred after she filed her fair housing complaint. She has also alleged that law enforcement officers were aware of her complaint of housing discrimination. She claimed that these negative encounters were "ongoing because she filed her fair housing complaint." (Filing No. 11 at 8.) The Court concludes that, at this early pleading stage, Cartwright's allegations are sufficient to state claims for retaliation under the FHA and NHFA. *See Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363 (8th Cir. 2003) (plaintiff's assertion that landlord threated to evict him as reprisal for his complaint that tenants were engaging in disability harassment was sufficient to allege a retaliation claim under the FHA).

    C.    <u>More Definite Statement</u>

In the alternative to their Motion to Dismiss, the City Defendants ask that this Court require Cartwright to file a second amended complaint with a more definite statement. Federal Rule of Civil Procedure 12(e) states that a motion for more definite statement is proper only if a pleading is "so vague or ambiguous that [a] party cannot reasonably prepare a response. . . . The motion must . . . point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). Federal Rule of Civil

Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

Cartwright alleged that she is female, that she suffers from a disability, and that the City of Sidney impermissibly discriminated against her on the basis of her sex and disability when it cited her for having more than three dogs living at her house and for having an unlicensed dog. She alleged that Frerichs, a male with no disability, with whom she shared a residence, was not cited for either violation. She also alleged multiple adverse actions committed by agents of the City of Sidney. These acts allegedly occurred after Cartwright filed her fair housing complaint, and were committed by city agents who were aware of her housing complaint. These facts are sufficient to put the City Defendants on notice of the claims against them, and the City Defendants' 12(e) motion will be denied.

## II.     BARTLING

With respect to Bartling, the Court concludes that Cartwright failed to state a claim for relief under the FHA or under the NFHA. Cartwright alleged that Bartling committed the following acts: when Cartwright called Bartling on December 12, 2011, Bartling informed her that "her only option was to come and pay the fine or a warrant for [her] arrest would be issued" (Filing No. 11 at ECF 19), and Bartling threatened to bar her from contacting the County Court on December 13, 2011. (Filing No. 11 at ECF 8).

With respect to any retaliation claim Cartwright intended to assert against Bartling, she failed to state a claim. Her allegations related to Bartling only involve acts committed prior to the date on which Cartwright filed her fair housing complaint. Thus, those acts do not provide a basis for a retaliation claim. Further, Cartwright did not

17

allege that she was actually barred from contacting the court or that she suffered any other harm as a result Bartling's actions. Additionally, Cartwright has not alleged any facts with respect to Bartling that give rise to an inference of discrimination on the basis of sex or disability. Therefore, Cartwright failed to state any claim for discrimination or retaliation against Bartling, and Bartling's motion to dismiss will be granted.[8]

## CONCLUSION

Liberally construing the Amended Complaint (Filing No. 11), Cartwright stated claims for sex and disability discrimination, and retaliation, against the City Defendants in their official capacities. She has not stated any viable claims against Bartling. Accordingly,

IT IS ORDERED:

1.  The City Defendants' Motion to Dismiss (Filing No. 23) is denied;

2.  Bartling's Motion to Dismiss (Filing No. 16) is granted;

3.  Bartling is dismissed as a defendant from the above-captioned action; and

4.  Defendants City of Sidney, Nebraska, Joanie Matthes, Jordan Ball, and Gary Pearson, in their official capacities, will respond to the Amended Complaint on or before July 10, 2015.

Dated this 18th day of June, 2015.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge

---

[8] Bartling, Clerk Magistrate for Cheyenne County, also moved to dismiss on immunity grounds under the doctrine of absolute judicial immunity. However, the Court need not address immunity with respect to Bartling because, for the reason's stated, Cartwright's claims against Bartling will be dismissed under Fed. R. Civ. P. 12(b)(6).