# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JENNIFER LYNN CARTWRIGHT,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NEBRASKA, CITY OF SIDNEY, CHEYENNE COUNTY, LORI BARTLING, JORDAN BALL, WENDALL GASTON, SIDNEY POLICE-JONI M, ROLAND, Judge; CHEYENNE COUNTY ATTNY OFFICE, ATTORNEY REPRESENTING CITY OF SIDNEY, UNKNOWN, CITY OF SIDNEY, NEBRASKA, JONY MATHEWS, AND Code Enforcer; and GARY PEARSON, City Manager;<br><br>Defendants. | 8:14CV246<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 84) ("Motion"), filed by Defendants City of Sydney, Joanie Matthes ("Matthes"), Jordan Ball ("Ball"), and Gary Pearson ("Pearson") (collectively "Defendants"). For the reasons stated below, the Motion will be granted, and the above-captioned action will be dismissed with prejudice.

## BACKGROUND

The following facts are those stated in the parties' briefs, supported by pinpoint citations to evidence in the record, according to NECivR 56.1[1] and Federal Rule of Civil

---

[1] *See* NECivR 56.1(b)(1) (effective December 1, 2015):
The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

Procedure 56. It is noted that Plaintiff Jennifer Lynn Cartwright ("Cartwright"), proceeding pro se, failed to comply with these rules. She did not "address each numbered paragraph" of Defendants' statement of facts, as NECivR 56.1 requires, but instead "object[ed] to [Defendants'] statement of facts numbered 1-30." (Filing No. 92 at ECF 3.) Cartwright did submit her own statement of facts. (*Id.* at ECF 3–10.)

Based on Cartwright's statement of facts, and the evidence she presented, it is apparent that very few material facts—if any—are in dispute. Below are those facts that are undisputed, based on the Parties' statements of facts and the evidence, or lack thereof, revealed in the record.

On June 2, 2011, Matthes, in her capacity as code enforcement officer for the City of Sydney, went to a residence at 2300 Trail Road in Sydney, Nebraska, where Cartwright was living with her boyfriend, Troy Frerichs ("Frerichs"). The purpose of Matthes's visit was to leave a warning regarding a weed violation on a different property owned by Frerichs. (Filing No. 86 ¶ 13.) No one answered when Matthes knocked on the door, but she heard several dogs barking. (*Id.*) Matthes contacted the Sydney Police Department to determine if any dogs were licensed at the address in accordance with City of Sydney Ordinance 618.06.[2] (*Id.*) Upon learning that no dogs were licensed, Matthes left written notice on the door asking the residents to license all dogs at the property within seven days. (*Id.*; Filing No. 92 at ECF 4 ¶ 2.)

On June 15, 2011, Matthes checked the Sydney Police Department database and found that no dogs had been licensed to Cartwright, Frerichs, or the residence at 2300 Trail Road. (Filing No. 86 ¶ 14.) The same day, Matthes sent a letter restating the

---
[2] The ordinance requires "[e]very person owning, keeping, or harboring a dog" to register it with the police and pay the licensing fee annually. Sydney, Neb., Ordinances 618.06 & 618.07.

request that any dogs kept at the property be licensed and stating that any unlicensed dogs were in violation of City of Sydney Ordinance 618.06. (*Id.*; Filing No. 92 at ECF 5 ¶ 3.)

On June 21, 2011, Cartwright called Matthes inquiring if she could administer the dogs' required rabies vaccinations herself.[3] Upon learning that the vaccinations could be performed only by licensed veterinarians,[4] Cartwright requested an extension and was given until July 5, 2011, to obtain the licenses. (Filing No. 86 ¶ 15.) On July 11, 2011, Cartwright again contacted Matthes, stating that there had been an illness in her family and that she would vaccinate the dogs on July 14, 2011. Matthes instructed her to license the dogs by July 15, 2011. (*Id.* ¶ 16.)

On July 15, 2011, Cartwright contacted Matthes and explained that she had four dogs at the residence. The dogs were named Midget, Boogie, Paris, and Putsy, and all four were toy poodles, none exceeding eight pounds. This conversation was the first time Matthes became aware that the number of dogs at the home exceeded the three-dog residential limit imposed by City of Sydney Ordinance 618.25.[5] (*Id.* ¶ 17.) Matthes informed Cartwright of this limit and that she could only license up to three dogs. Matthes also told Cartwright that she could apply for a kennel permit, which, if approved, would allow her keep all four dogs at the residence. (*Id.*)

---

[3] City of Sydney Ordinances 618.06 states that "[n]o license receipt . . . shall be issued until such dog has been vaccinated against rabies, as provided in Section 618.24. Sydney, Neb., Ordinance 618.06.

[4] City of Sydney Ordinance 618.24 states that "'vaccination against rabies' means the inoculation of a dog with a rabies vaccine licensed by the United States Department of Agriculture. Such vaccination must be performed by a veterinarian duly licensed to practice veterinary medicine. Sydney, Neb., Ordinance 618.24.

[5] The ordinance states that "[n]o person shall establish, maintain, manage, or keep more than three dogs and three cats on any lot or tract of land within the City [of Sydney] . . . ." Sydney, Neb., Ordinance 618.25.

3

On July 19, 2011, Cartwright called Matthes and informed her that one of the dogs was a service animal. Matthes told Cartwright that all the dogs needed to be licensed, that Cartwright would not be charged a fee for licensing the service animal, and that she could only keep a total of three dogs at the residence. (*Id.* ¶ 18.)

On July 22, 2011, the City of Sydney filed a complaint in Cheyenne County Court against Cartwright for failure to license the dogs and for having more than three dogs at her residence. (*Id.* ¶ 21; Filing No. 92 at ECF 5 ¶ 3.) On July 25, 2011, Cartwright licensed Midget, Boogie, and Paris. Cartwright identified Midget and Boogie as service dogs and was not charged a licensing fee for them. (Filing No. 86 ¶ 22.) Midget and Boogie were licensed as belonging to Cartwright, while Cartwright identified Frerichs as the owner of Paris. (*Id.*) Cartwright did not license Putsy at that time, although Putsy was previously licensed to Cartwright in 2009. (*Id.*)

The Cheyenne County Court found Cartwright guilty of violating City of Sydney ordinances in a trial held on September 26, 2011; fined her $100 for each violation; and charged her $49 in court costs, for a total of $249. (*Id.* ¶ 24; Filing No. 92 at ECF 6 ¶ 13.)

On September 26, 2011, Cartwright filed a complaint with the Department of Housing and Urban Development ("HUD"), which referred the case to the Nebraska Equal Opportunity Commission ("NEOC"). (Filing No. 86 ¶ 25.) The NEOC issued a determination letter on August 17, 2012, and, on September 21, 2012, referred the file to the Nebraska Attorney General's Office, which declined to pursue the case. (*Id.* ¶¶ 26–27.)

In April of 2013, Cartwright and Frerichs ended their relationship, and Cartwright moved out of the residence at 2300 Trail Road, leaving all four dogs with Frerichs. Within two months of Cartwright moving out, Frerichs got rid of the dogs. (*Id.* ¶¶ 28–29.) Eventually, Cartwright reacquired Midget and Boogie, both of whom she currently owns. (*Id.* ¶ 30.)

Cartwright initiated this action on August 19, 2014, (*see* Filing No. 1), and filed her Amended Complaint (Filing No. 11) ("Amended Complaint") on December 8, 2014. In its order denying Defendants' Motion to Dismiss (Filing No. 28), the Court liberally construed Cartwright's pro se Amended Complaint—a document that did not enumerate any specific claims but, instead, referenced and included her entire NEOC complaint. The Court held that Cartwright sufficiently pled claims for relief under the Fair Housing Act, 42 U.S.C. §§ 3601–3631 ("FHA"), and the Nebraska Fair Housing Act, Neb. Rev. Stat. §§ 20-301 to 20-344 (Reissue 2012) ("NFHA").

## STANDARD OF REVIEW

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S. Ct. 513 (2011)). In reviewing a motion for summary judgment, the Court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five*

*Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting Fed. R. Civ. P. 56(c)).

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (internal quotation marks omitted) (quoting *Torgerson*, 643 F.3d at 1042). "[T]he mere existence of some alleged factual dispute between the parties" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine

dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (internal quotation marks omitted) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## DISCUSSION

Mindful of Cartwright's pro se status, the Court liberally construed her Amended Complaint in accordance with Eighth Circuit law and determined she had pled claims under the FHA and NFHA. (*See* Filing No. 28 at 9 & 11–16 (citing *Miles v. Ertl Co.*, 722 F.2d 434 (8th Cir. 1983)).) Nonetheless, Cartwright had the burden to present evidence demonstrating a dispute of material fact to resist Defendants' motion for summary judgment. *See St. Paul Reinsurance Co. v. Hristov*, 155 F. App'x 249, 250 (8th Cir. 2005) (holding that defendant's former pro se status did not require district court to withdraw deemed admissions resulting from a failure to respond to motion for summary judgment); *Bennett v. Dr Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (quoting *Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir. 1993)) ("[Nonmovant's] 'pro se status did not entitle him to disregard the Federal Rules of Civil Procedure,' even without affirmative notice of the application of the rules to his case."); *id.* at 808–09 ("The court was not bound, by rule or otherwise, to search the record for genuine issues of fact, when [pro se nonmovant] failed to bring such issues to the attention of the court.").

Cartwright alleged that Defendants discriminated against her on the basis of her sex and disability, in violation of the FHA and NFHA. She also alleged that Defendants harassed and intimidated her in retaliation for filing a fair housing complaint.[6]

"Disparate-treatment claims under the FHA are tested under the same framework as Title VII disparate-treatment claims." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010) (citing *Ring v. First Interstate Mortgage, Inc.*, 984 F.2d 924, 926 (8th Cir. 1993)). "Proof of discriminatory purpose is crucial for a disparate treatment claim." *Id.* (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)); *see Dirden v. Dep't of Hous. & Urban Dev.*, 86 F.3d 112, 114 (8th Cir. 1996) ("A plaintiff must prove discriminatory intent to prevail on a claim under the FHA.")

"Summary judgment [of a disparate treatment claim] is warranted if the plaintiff cannot produce either (a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent under the *McDonnell Douglas* burden-shifting framework" *Gallagher*, 619 F.3d at 831 (internal footnote omitted). "Absent direct evidence of discrimination, courts apply the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Tesemma v. Evans*, No. CIV. 09-2744 DSD/JJK, 2011 WL 3418227, at *2 (D. Minn. Aug. 4, 2011) (citing *Dirden,* 86 F.3d at 114; *United States v. Badgett,* 976 F.2d 1176, 1178 (8th Cir. 1992)). "Pursuant to that framework, the plaintiff must first make a prima facie showing of discrimination." *Id.* (citing *McDonnell Douglas,* 411 U.S. at 802). If a plaintiff

---

[6] Although Cartwright's allegations do not involve the sale or rental of her home, post-acquisition claims are actionable under sections 3604 and 3617 of the FHA. *United States v. Koch*, 352 F. Supp. 2d 970, 975–76 (D. Neb. 2004) ("[T]he Eighth Circuit has held that a plaintiff can base a section 3604 or 3617 claim on discriminatory acts that occurred after housing had been acquired.") (citing *Neudecker,* 351 F.3d 361).

establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the defendant's conduct. *Badgett,* 976 F.2d at 1178. The burden then shifts back to the plaintiff, who must rebut the defendant's proffered reason by showing that it is pretext for unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 802. The same framework applies to Cartwright's claims under the NFHA. *See Osborn v. Kellogg,* 547 N.W.2d 504, 511 (Neb. App. 1996).

**I. Sex Discrimination**

Cartwright alleged that Defendants discriminated against her because she is female. (*See* Filing No. 11 at ECF 7.) Section 3604(b) of the FHA prohibits "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The NFHA prohibits the same. Neb. Rev. Stat. § 20-318(2) (Reissue 2012).

Cartwright has not alleged any direct evidence of sex discrimination, thus the Court will analyze her claims of sex discrimination under the *McDonnell Douglas* framework. To establish a prima facie case, Cartwright "must show that she is a member of a protected class and that she was 'not offered the same terms, conditions or privileges of rental under circumstances that give rise to a reasonable inference of unlawful discrimination.'" *Tesemma*, 2011 WL 3418227, at *3 (internal footnote omitted) (quoting *Groteboer v. Eyota Econ. Dev. Auth.,* 724 F.Supp.2d 1018, 1023 (D. Minn. 2010)).

Cartwright alleged that both she and Frerichs lived in a house with four dogs. She was cited for exceeding the City of Sidney's three-dog limit and for having an

unlicensed dog, while Frerichs, a male, was not. Assuming Cartwright alleged a prima facie case, the Defendants articulated legitimate, nondiscriminatory reasons for their conduct, and Cartwright provided no evidence suggesting that such reasons are a pretext for discrimination.

Matthes initially left a warning for the residents of 2300 Trail Road. It was *Cartwright* who contacted Matthes on July 21, 2011, and communicated that *she* was responsible for licensing the dogs. (Filing No. 86 ¶ 15.) City of Sydney Ordinance 618.06 applies not just to a dog's ultimate owner but to any person "owning, keeping, or harboring" a dog. There is no factual dispute that this applied to Cartwright, and neither the FHA nor the NFHA required Defendants to seek out all potential qualifiers under Ordinance 618.06 and prosecute them as well. Defendants articulated legitimate, nondiscriminatory reasons for their conduct, and the burden returned to Cartwright to show pretext. Because Cartwright did not produce—and the record does not contain—any evidence indicating Defendants' reasons for prosecuting Cartwright were a pretext for discrimination, she has not met her burden and there is no genuine issue of material fact as to Cartwright's sex discrimination claim.

## II. Disability Discrimination

Cartwright alleged that Defendants discriminated against her on the basis of her disability by refusing to grant her request for a reasonable accommodation, *i.e.*, allowing her to keep two service dogs[7] and two non-service dogs in excess of Sydney's three-dog limit. (*See* Filing No. 11 at ECF 7.) Under the FHA and NHFA it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of

---

[7] The Court assumes—without deciding—that both dogs qualified a service animals under all relevant statutes and ordinances.

a dwelling, or in the provision of services or facilities in connection with such dwelling" on the basis of that person's disability. 42 U.S.C. § 3604(f)(2); *see also* Neb. Rev. Stat. § 20-319(1)(b) (Reissue 2012). Discrimination prohibited by the FHA and NFHA includes the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ." 42 U.S.C. § 3604(f)(3)(B); Neb. Rev. Stat. § 20-319(2)(b).

To prevail on a reasonable accommodations claim under § 3604(f)(3)(B), a plaintiff must prove:

> (1) that the plaintiff . . . is handicapped[8] within the meaning of [the FHA]; (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

*DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006). "The court applies a modified burden-shifting analysis to reasonable accommodation claims." *Groteboer*, 724 F. Supp. 2d at 1024 (citing *Peebles v. Potter*, 354 F.3d 761, 766 (8th Cir. 2004)). After a plaintiff shows that a requested accommodation was reasonable on its face, a defendant must "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* (internal quotation marks omitted) (quoting *Peebles*, 354 F.3d at 768).

---

[8] The FHA defines handicap as "a physical or mental impairment which substantially limits one or more of such person's major life activities, . . . a record of having such an impairment, or . . . being regarded as having such an impairment . . . ." 42 U.S.C. § 3602(h).

Summary judgment is warranted on Cartwright's disability discrimination claim, because the record is devoid of evidence supporting the third element of her claim, *i.e.*, that the accommodation may have been necessary to afford her an equal opportunity to use and enjoy the dwelling.[9] *See Celotex Corp.*, 477 U.S. 317, 322–23, (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ."). The record indicates that once Cartwright asserted that two of her dogs were service animals, she was not charged a licensing fee for those animals. The designation of the two dogs as service animals did not require Defendants to exempt Cartwright from the three-dog limit mandated by city ordinance. She was still limited to three dogs, though two were service animals. Cartwright cannot establish that the accommodation she sought was necessary to afford her an equal opportunity to use and enjoy the dwelling, and her claim fails.[10]

### III. Retaliation

Cartwright alleged that the Defendants "harass[ed] and intimidate[d] her in retaliation for filing a fair housing complaint . . . ." (Filing No. 11 at ECF 8.) Under both the FHA and the NFHA, it is unlawful "to coerce, intimidate, threaten, or interfere with

---

[9] Because the third element cannot be met, the Court need not consider the presence of factual disputes concerning the other elements.

[10] Defendants note that, although no such claim is found in her Amended Complaint, Cartwright stated in an interrogatory response that she was also seeking relief under the Americans with Disabilities Act, 42 U.S. §§ 12101–12213 ("ADA"). In its Order denying Defendants' Motion to Dismiss, the Court—liberally construing the Amended Complaint—identified only the FHA and NFHA claims. To date, Plaintiff has not sought to amend her Complaint to include an ADA claim. However, any such claim would fail for the same reason as her Disability Discrimination claims under the FHA and NFHA. One element of a prima facie Title II ADA claim is that the claimant "was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity." *Layton v. Elder*, 143 F.3d 469, 472 (8th Cir. 1998). There is no factual dispute that this element is not met. Cartwright was allowed to license both service animals and was not charged a fee for doing so. That the service animals still counted against her three-dog limit did not amount to discrimination under the ADA.

any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed" any rights granted by the FHA or NFHA. 42 U.S.C. § 3617; Neb. Rev. Stat. § 20-344 (Reissue 2012).

In her Complaint, Cartwright alleged that after she filed her fair housing complaint, law enforcement drove by and parked near her residence more frequently than before. She also described several unpleasant interactions between city law enforcement and members of her family after she filed her fair housing complaint. (Filing No. 11 at 8.) In her statement of material facts presented in opposition to the pending Motion, Cartwright mentioned no retaliatory incidents, and the record is devoid of any evidence of them. In its Order denying the Motion to Dismiss, the Court repeatedly noted that it was liberally construing Cartwright's Complaint, mindful that she was proceeding pro se. Yet Cartwright bore the burden of producing some evidence to resist Defendants' Motion. She produced none, and summary judgment will be granted.[11]

## CONCLUSION

For the reasons stated herein, the Court finds that there is no factual dispute warranting a trial. The Defendants' Motion for Summary Judgment will be granted, and the Plaintiff's action will be dismissed, with prejudice. Accordingly,

---

[11] Because Cartwright did not meet her burden of resisting Defendants' Motion as to any of her claims, it need not consider Defendants' arguments concerning qualified immunity.

IT IS ORDERED:

1. Defendants' Motion for Summary Judgment (Filing No. 84) is granted;

2. The case is dismissed with prejudice;

3. A separate judgment will be entered.

Dated this 6th day of June, 2016.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge